UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

UNITED STATES                                              PLAINTIFF

v.                                                 No. 5:23-cr-24-BJB

TAYLOR GLASS                                               DEFENDANT

* * * * *

## ORDER DENYING MOTION FOR JUDICIAL RECOMMENDATION

Taylor Glass pled guilty to one count of possessing child pornography. The Court sentenced him to 51 months of imprisonment and 10 years of supervised release in April 2024. Criminal Judgment (DN 32).

Ten months after his sentencing hearing, Glass asked the Court for a "judicial recommendation" "urging the Federal Bureau of Prisons to allow the maximum twelve (12) months of [Residential Reentry Center] placement under the Second Chance Act and to utilize all applicable credits under the First Step Act." DN 34 at 2. In support of his motion, Glass cites his successful participation in "RDAP," the Residential Drug Abuse Program. *Id.* at 1. The Government responded to Glass's motion, arguing that this Court lacks jurisdiction to order the Bureau of Prisons "to release [Glass] to a half-way house or to home confinement." DN 35 at 1.

The Government is correct that this Court lacks authority, following sentencing and final judgment, to issue the sort of non-binding recommendation that Glass seeks. Under these circumstances, at least, the location of his confinement is a question assigned to the discretion of the Federal Bureau of Prisons.

"Federal courts are courts of limited jurisdiction," wielding "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). When it comes to sentencing, district courts largely draw their authority from 18 U.S.C. § 3553. Substantively, that statute requires the judge "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of the federal sentencing laws established by Congress. Procedurally, § 3553(c) requires the judge to "state in open court the reasons for its imposition of the particular sentence."

1

Once the judge imposes a sentence, responsibility for implementing it shifts to the Bureau of Prisons—including by determining where to house the convicted defendant. *See* 18 U.S.C. § 3621. In making that determination, the Bureau must consider "any statement by the court that imposed the sentence—concerning the purposes for which the sentence to imprisonment was determined to be warranted; or recommending a type of penal or correctional facility as appropriate." § 3621(b)(4). Judges have long discussed the purposes and prospects of rehabilitation and correction during sentencing hearings. And indeed the § 3553(a) factors, which judges *must* consider in the course of reaching and announcing a sentencing decision, often touch on actions or programs that may benefit a defendant during or after incarceration. *See United States v. Rucker*, 874 F.3d 485, 488 (6th Cir. 2017) ("[A] district court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs.") (quotation marks omitted). 18 U.S.C. § 3553(a)(2)(D), for example, directs courts to consider "needed educational or vocational training, medical care, or other correctional treatment" when imposing a sentence. That is one reason why judges regularly mention that a defendant may be a good candidate for the BOP to evaluate for, say, drug treatment, mental-health counseling, or GED or trade instruction.

That sort of discussion is familiar and proper for any thoughtful sentencing judge, trial lawyer, and reviewing panel. But in the main the judge's sentence controls only the length of custody and supervised release, the concurrent or consecutive nature of that sentence, any financial penalties or assessments, and any special conditions of release. *See generally Setser v. United States*, 566 U.S. 231, 236–37 (2012). Anything else offered in the way of a "court's recommendations" remains just that—"only recommendations." *Tapia v. United States*, 564 U.S. 319, 331 (2011). That includes the final decision about where to house a prisoner and what programs should be made available to him, both of which Congress assigned to the Bureau: "When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment,' § 3621(b), and the treatment programs (if any) in which he may participate, §§ 3621(e), (f); § 3624(f)." *Tapia*, 564 U.S. at 331. And that discretion is unreviewable: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." § 3621(b)(5). So only the Bureau can, for example, decide whether to place a prisoner in a facility that offers drug treatment or other rehabilitation programs.

The upshot is that any judicial recommendations about the conditions of a prisoner's confinement "must be made at the time of sentencing—not afterward."

2

*United States v. Johnson*, 679 F. Supp. 3d 601, 602 (E.D. Mich. 2023).  To be sure, some district courts have viewed their power more expansively, concluding that the absence of any express statutory prohibition or limitation means that courts "always" have authority "to make non-binding placement recommendations to the BOP."  *See United States v. Buckner*, No. 13-20299, 2019 WL 7020742, at *1 (E.D. Mich. Dec. 20, 2019); *see also id.*, 2019 WL 2950079, at *2 (July 9, 2019) (collecting cases).  And on that basis these judges have issued post-sentencing orders recommending that BOP place prisoners in halfway houses, home confinement, and drug treatment programs.  *See, e.g.*, *United States v. Bartels*, No. 12-cr-20072, 2016 WL 6956796, at *2 (E.D. Mich. Nov. 29, 2016) (halfway house); *United States v. Qadri*, No. 06-cr-00469, 2017 WL 1011663, at *2 (D. Haw. Mar. 15, 2017) (halfway house and home confinement); *United States v. Boylan*, No. 1:19-cr-251-19, 2025 WL 3760769 at *4 (N.D. Ohio Dec. 30, 2025) (drug treatment).

That sort of post-sentencing, non-binding judicial recommendation is difficult to reconcile with both the statutory scheme and broader structural principles regarding the Constitution's separation of powers.

First, the supposed "absence" of statutory authority is debatable at best.  As noted above, Congress expressly rendered the "designation of a place of imprisonment … *not reviewable by any court*."  § 3621(b)(5) (emphasis added).  And no other source of positive law or binding precedent appears to authorize such recommendations.  Although some courts cite § 3621 or *Tapia* to support issuing these non-binding recommendations, they do not distinguish between the pre- and post-sentencing contexts.  *See, e.g.*, *United States v. Buckley*, No. 2:13-cr-125, 2018 WL 6067437, at *1–2 (E.D. Cal. Nov. 20, 2018) (issuing recommendation that BOP place defendant in halfway house despite acknowledging that "recommendation has 'no binding effect' on the BOP to determine or change a prisoner's placement").

Further, the Federal Rules of Criminal Procedure and other aspects of the U.S. Code at least implicitly deny sentencing judges any open-ended authority to revisit a previously imposed sentence.  Federal law strictly limits the avenues for altering a final order. *See generally Fernandez v. United States*, 146 S. Ct. 1292, 1300 (2026) (discussing "tight procedural constraints" that limit collateral attacks to federal sentences).  Under Federal Criminal Rule 35(a), a "court may correct a sentence that resulted from arithmetical, technical, or other clear error" within 14 days.  And the compassionate-release and habeas statutes carve narrow and detailed pathways to revisit a final criminal judgment.  In general, courts "may not modify a term of imprisonment once it has been imposed" unless a defendant qualifies for compassionate release, 18 U.S.C. § 3582(c), or the sentence "was imposed in violation

3

of the Constitution or laws of the United States," 28 U.S.C. § 2255(a).  Although the First Step Act, which Congress passed in 2018, loosened some of the procedural requirements for compassionate release, it left unchanged § 3582's categorical limitation on judicial authority.  *See United States v. Ruffin*, 978 F.3d 1000, 1003–04 (6th Cir. 2020).  When statutory text doesn't expressly contemplate or foreclose a particular type of post-sentencing request, the law defaults against such authority.  This "structural inference" of our federal sentencing and post-conviction regimes rejects freewheeling judicial authority to amend sentences.  *Fernandez*, 146 S. Ct. at 1304–07.  "A prison sentence, once imposed, usually cannot be modified by the district court."  *Rutherford v. United States*, 146 S. Ct. 1320, 1326, 1331–34 (2026) (rejecting expansive reading of one of "several narrow exceptions" allowing for compassionate release).

This skeptical approach to statutory relief reflects even more deeply seated principles of constitutional avoidance and interpretation.  "Article III, § 2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies,'" which has "always" been "taken … to mean cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process."  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998).  The judicial power is thus largely a "power to render judgments in individual cases."  *See Murphy v. NCAA*, 584 U.S. 453, 488 (2018) (Thomas, J., concurring).  While the borders of the case-and-controversy authority have long been contested, since the Republic's earliest days federal judges have treated the inappropriateness of non-binding advisory opinions as common ground.  First and most memorably, in 1793 President Washington and his cabinet (through Secretary of State Jefferson) sought counsel from the Supreme Court on 29 contingent legal questions regarding the United States's Proclamation of Neutrality.  But Chief Justice Jay and his colleagues declined, despite Jefferson's entreaty that the Court help "secure [the administration] against errors dangerous to the peace of the United States," by drawing on "their authority [to] ensure the respect of all parties."  *See, e.g.*, Richard H. Fallon, Jr., et al., Hart and Wechsler's The Federal Courts and the Federal System (7th ed., 2015), at 49–52 (Justices considered Cabinet questions to be inconsistent with "lines of separation drawn by the Constitution between the three departments of the government").  In contrast to the courts of their English predecessors, here the founding generation established a judiciary whose "independence meant the ability to legally resolve cases, not merely opine on them to the President."  William Baude, *The Judgment Power*, 96 Geo. L.J. 1807, 1816–17 (2008).  "The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion."  *Marbury v. Madison*, 1 Cranch 137, 170 (1803).  So

from the founding onward, courts have resisted the temptation to offer legal opinions that do not decide—that is, render a binding judgment on—a pending case or controversy.

Here, Glass seeks a post-sentencing judicial recommendation that the BOP consider placing him in a halfway house or home confinement. DN 34 at 2. But such a recommendation wouldn't be offered in support of a judgment; nor would it adjudicate a dispute between the Bureau and Glass—or in any way bind the Bureau. Instead, the requested relief would be a mere recommendation to the executive branch divorced from any exercise of the judicial power—little more than "an effort to try to persuade the Executive to do as [the Court] said." Baude, 96 GEO. L.J. at 1816. And though the stakes of a prisoner drug-treatment program might appear substantially lower than those of war between England and France, the Defendant whose liberty is at stake may take a different view. And, more importantly, a principled difference between the two would-be advisory opinions is hard to discern; when the Constitution and Congress have assigned a judgment's execution to a coordinate branch, courts lack any basis for back-seat driving.

Does the inadvisability and arguable unconstitutionality of *post hoc* judicial recommendations call into question similar observations offered *a priori*? No. During the sentencing hearing, a live controversy undoubtedly persists. And Congress, in § 3621, expressly contemplated Bureau "consider[ation]" of judicial recommendations. Such recommendations, moreover, often offer or illuminate the reasoning required to connect a judge's decision to the sentencing considerations enacted by Congress. This judge's articulated reasoning about rehabilitation (as well as deterrence and punishment) features prominently in many of the Supreme Court's seminal sentencing decisions. *See, e.g.*, *Rita v. United States*, 551 U.S. 338, 356 (2007) ("[A] statement of reasons is important. The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority.") (citing § 3553(a)); *Mistretta v. United States*, 488 U.S. 361, 390 (1989) ("For more than a century, federal judges have enjoyed wide discretion to determine the appropriate sentence in individual cases and have exercised special authority to determine the sentencing factors to be applied in any given case."); *United States v. Addonizio*, 442 U.S. 178, 188–89 (1979) ("The decision as to when a lawfully sentenced defendant shall actually be released has been committed by Congress, with certain limitations, to the discretion of the Parole Commission…. [O]nce a sentence has been imposed, the trial judge's authority to modify it is also circumscribed. Federal Rule Crim. Proc. 35 now authorizes district courts to reduce a sentence within 120 days after it is

imposed or after it has been affirmed on appeal. The time period, however, is jurisdictional and may not be extended."). None of these acknowledgments of *how* district judges typically and thoughtfully announce sentences at the conclusion of a prosecution, however, answer *whether* judges may later offer non-binding recommendations regarding the implementation of final judgments. Nothing about Article III or § 3621 counsels otherwise. *See, e.g.*, *National Mutual Insurance Co. v. Tidewater Transfer Co.*, 337 U.S. 582, 590–91 (1949) (plurality) ("limits to the nature of duties which Congress may impose on the constitutional courts vested with the federal judicial power" include "participat[ion] in any legislative, administrative, political or other nonjudicial function or [rendering of] any advisory opinion").

Even if the Court had authority to make a *post hoc* recommendation, moreover, deference to the Bureau would be preferable given its administration of the scheme Congress has created for determining where and how to house prisoners. *See* 18 U.S.C. § 3621. "The BOP has the most complete and accurate information regarding the five factors to make an individual determination regarding Defendant's placement, including this Court's statements at Defendant's sentencing." *United States v. George*, No. 14-20119, 2018 WL 2148179, at *3 (E.D. Mich. May 10, 2018).

The Court therefore denies Glass's motion for release or home confinement (DN 34). The case remains closed.

6